**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Eastern District of New York                                                     1:19-cv-00650-NGG-PK

| | |
|---|---|
| Freddie Jamison, Charisse Adams, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| - against - | First Amended Complaint |
| Target Corporation, | |
| Defendant | |

Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiffs', which are based on personal knowledge:

1.      Target Corporation ("defendant") manufactures, distributes, markets, labels and sells cracker products purporting to be sweetened primarily with honey and containing a predominant amount of whole grain graham flour under their Market Pantry brand ("Products").

2.      The Products are available to consumers from defendant's retail stores and website and are sold in boxes of 14.4 OZ (408g) and 28.8 OZ (816g).

3.      The relevant front and back label statements include a statement of identity, "Honey Graham Crackers," image of a dark brown cracker, "Made with Real Honey" beneath the arc of a honey bee, "8g Whole Grains Per Serving" wrapped in a stalk of wheat and "No High Fructose Corn Syrup."



4.     The Product's side panel contains the Nutrition Facts and ingredient list.



**INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), GRAHAM FLOUR (WHOLE GRAIN WHEAT FLOUR), SUGAR, CANOLA AND/OR SOYBEAN AND/OR PALM OIL, HONEY, LEAVENING (BAKING SODA, CALCIUM PHOSPHATE), SALT, NATURAL FLAVOR, SOY LECITHIN, SODIUM SULFITE.

## I.     Honey is Misrepresented as Main Sweetener

5.     The Product's representations convey that honey is the exclusive, primary and/or significant sweetener in the Products.

2

6.     However the Products are sweetened primarily with sugar and contain only miniscule amounts of honey.

A.  Sugar Disfavored as Sweetener

7.     In 2014, the National Institutes of Health cautioned: "experts agree that Americans eat and drink way too much sugar, and it's contributing to the obesity epidemic. Much of the sugar we eat isn't found naturally in food but is added during processing or preparation."[1]

8.     The NIH noted further: "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide."[2]

9.     There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity."[3]

10.     In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]."[4]

11.     As part of a societal trend toward consuming healthier foods and natural foods, avoidance of added sugar has been and remains a significant consumer preference, with consumers strongly favoring honey as a sugar substitute.

12.     At least in part due to growing consumer awareness of health problems caused by excessive sugar consumption, in recent years consumers have shown a distinct preference for products with little or no added sugar.

---

[1] NIH, Sweet Stuff: How Sugars and Sweeteners Affect Your Health, October 2014.
[2] Id.
[3] Marlene Cimons, Eating too much sugar can hurt your health, and for some it's actually addictive, Washington Post December 16, 2017.
[4] Kieron Rooney, Yes, too much sugar is bad for our health – here's what the science says, The Conversation, March 8, 2018.

13.     In August, 2016, an article in "Prepared Foods" magazine noted that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years."[5]

14.     As another observer of the food industry explained in May, 2017: "[h]ealth concerns and better educated consumers are propelling the demand for sugar reduction across food and beverage categories. . . Sugar reduction will be one of the top marketing claims prominently featured on products in the coming year.    .    ."[6]

15.     Similarly, an article in the February 28, 2018, edition of "Food Business News" reported that "[s]peakers addressing consumer trends at the International Sweetener Colloquium in Orlando on February 13 said sugar avoidance was a macro trend 'that is here to stay and will only increase.'"[7]

16.      The same article noted that "I.R.I. [Information Resources, Inc.] surveys show that 58% of consumers across generations are avoiding sugar. . . [and of] those avoiding sugar, 85% are doing so for health reasons and 58% for weight concerns."[8]

B.  Consumer Preference for Products Sweetened with Honey Instead of Sugar

17.     Surveys show "[c]onsumers rated honey at 73% 'better for you than sugar."[9]

18.     A survey highlighted in "Prepared Foods" magazine in 2018 noted that: (i) "93% of consumers consider honey to be a natural sweetener;" (ii) "58% of consumers with one or more children look for honey on the product label;" (iii) "60% of consumers between the ages of 18 and 34 look for honey on the product label; and (iv) about half of consumers would pay at least 5%

---

[5] PreparedFoods.com, Trends in Sugar Reduction and Natural Sweeteners, August 24, 2016.
[6] Laura Dembitzer, Less is More: Sugar Reduction, Less Sodium & Low-FODMAPS in Food, Beverage, Food Insider Journal, May 09, 2017.
[7] Ron Sterk, Avoidance of sugar remains macro trend, Food Business News, February 28, 2018
[8] Id.
[9] Id.

more for food bars, ready-to-drink tea, and yogurt primarily sweetened with honey."[10]

19.    Referring to food products perceived as healthier, the Huffington Post reported that "[a]ccording to a 2015 Nielsen survey of 30,000 people, 90% of shoppers are willing to pay more for the added quality and benefits."[11]

20.    Honey is a naturally occurring substance and, unlike sugar, has small amounts of nutrients such as vitamins, minerals, enzymes, and antioxidants.

21.    In addition, honey has a lower glycemic index than sugar, meaning that it causes slower fluctuations in blood glucose levels (often referred to as "blood sugar") and therefore in insulin levels as well.

22.    Rapid spikes of blood glucose levels lead to quick spurts of energy followed by sharp declines in energy characterized by tiredness, headaches, and difficulties in concentrating ("low blood sugar").

23.    Although sugar contains slightly fewer calories than honey by weight, honey is much sweeter than sugar and therefore less is needed to achieve the same level of sweetness.

24.    Based on the common marketplace perception that honey is healthier and more natural than sugar, consumers place a greater value on products that are sweetened with honey instead of sugar and are willing to pay a higher price for such products.

C.    Contrary to Representations, Honey is Present in De Minimis Amount and Products Sweetened Mainly with Sugar

25.    The sweeteners in the Product include (1) sugar ("white," "regular" or "table" sugar), made from liquid extracted from sugar beet and sugar cane plants after multiple stages of

---

[10] Supra, Trends in Sugar Reduction and Natural Sweeteners.
[11] Brian Kennell, Healthy Food Trends Drive New Products, HuffingtonPost.com, October 1, 2015 updated December 6, 2017.

processing and refinement and (2) honey, made by bees from the nectar of flowering plants.

26.    The Product's ingredients, listed in descending order of predominance, reveal that

sugar is the predominant sweetening agent and honey is least predominant.

**INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), GRAHAM FLOUR (WHOLE GRAIN WHEAT FLOUR), SUGAR, CANOLA AND/OR SOYBEAN AND/OR PALM OIL, HONEY, LEAVENING (BAKING SODA, CALCIUM PHOSPHATE), SALT, NATURAL FLAVOR, SOY LECITHIN, SODIUM SULFITE.

**INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), GRAHAM FLOUR (WHOLE GRAIN WHEAT FLOUR), SUGAR, CANOLA AND/OR SOYBEAN AND/OR PALM OIL, HONEY, LEAVENING (BAKING SODA, CALCIUM PHOSPHATE), SALT, NATURAL FLAVOR, SOY LECITHIN, SODIUM SULFITE.

27.    That the Products contain a miniscule amount of honey is confirmed by independent

laboratory testing results obtained by plaintiff's counsel.

28.    By comparing the sugar profile of the Products with the sugar profile of honey, as

contained in the USDA Food Database, the amount of honey can be estimated.

Sugar Profile of Honey

| | |
|---|---|
| | 36% glucose |
| | 41% fructose |
| 82% sugar | ~3% galactose |
| | ~1% maltose |
| | <1% sucrose |
| 17%  moisture | |
| <1% from ash | |
| <1% from protein | |
| Total: 100 % | |

29.    The sugar profile of honey reveals 44% of its sugar content is due to glucose while

50% is from fructose.

30.    Where a food has naturally occurring sugars like in fruits, the sweetening is the result of fructose and/or glucose (sometimes referred to as dextrose).

31.    Standard "sugar" as used in the Products is sucrose.

32.    The laboratory analysis performed on the Products recovered 21.7% total sugar, which is consistent with the amount of sugars declared on the Nutrition Facts, 8g per 31g serving.

33.    Plaintiff does not allege that the percentage or amount of sugar as indicated on the Nutrition Facts is incorrect even though 8g of a 31g serving is 25.8% total sugar.

34.    Deviations from the Nutrition Facts values are permitted by law due to rounding calculations and other criteria and are not challenged here as the basis of any claim.

35.    From the total 21.7% sugar recovered, almost 93% (20.15%) was from sucrose (added sugar) with 0.75% (0.035%) from fructose and 0.76% (0.035%) from glucose.

36.    Assuming the fructose and glucose was contributed by honey, the amount of honey in the Products would not exceed 1.7%, which is consistent with the ratio of fructose to glucose.

II.    Products are Misleading Due to Representations they Contain More Whole Grains than Actually Present

37.    The "graham" in "graham crackers" refers to whole grain, graham flour.

38.    This whole grain flour consists of the three parts of the entire grain – endosperm, germ, and bran as opposed to white flour which only contains the endosperm.

39.    The whole grain content distinguishes a graham cracker from other crackers and cookies which are made with mostly white flour.

40.    The Products are sold alongside other cracker products instead of cookies.

41.    Reasonable consumers expect the Products' composition to conform to their name because the term "graham" modifies "crackers" such that whole grain graham flour will presumably be the predominant or exclusive flour type.

42. Dictionaries confirm what reasonable consumers expect when it comes to a (honey) "graham cracker," defining it as "a slightly sweet cracker made of whole wheat flour" and "a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour."[12]

A. Consumers Expect Product Labeled with Whole Grain Claim to Contain More Fiber

43. Consumer surveys have confirmed that consumers increasingly seek products made with whole grains because they are expected to contain, and do contain, more fiber than refined white flour:[13]

44. At least half of consumers expect that for every one gram of whole grain per serving, there will be at least one gram of fiber;

45. Two-thirds of consumers (67%) agree with the statement that whole grain foods are high in fiber; and

46. 75% of consumers who observe claims that a product is made with, or contains whole grains, will expect the food to be at least a good source of fiber.

47. The 2015 Dietary Guidelines for Americans recommended that at least half of the grains in a healthy diet should be whole grains.[14]

48. The FDA cautioned manufacturers against misleading consumers as to whole grain content of foods:[15]

> 7. Question: Does the term "whole grain" mean the same as "100 percent whole grain"? If a product is labeled as "whole wheat bagel" or "whole wheat

---

[12] https://www.dictionary.com/browse/graham-cracker
[13] FDA-2006-D-0298-0016, Exhibit 1a - "A Survey of Consumers Whole Grain & Fiber Consumption Behaviors, and the Perception of Whole Grain Foods as a Source of Dietary Fiber" - [Kellogg Company - Comment] (July 1, 2010); Docket ID: FDA-2006-D-0298, Guidance for Industry and FDA Staff: Whole Grains Label Statements.
[14] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *Dietary Guidelines for Americans 2015–2020* (8th ed. 2015), *available at* http://goo.gl/qnyfLi (click "A Closer Look Inside Healthy Eating Patterns" under "Chapter 1. Key Elements of Healthy Eating Patterns").
[15] Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements," Docket No. 2006D-0066, ("Whole Grain Guidance").

pizza," how much whole wheat should it contain? What is graham flour?

Answer: FDA has not defined any claims concerning the grain content of foods. However, the agency has established standards of identity for various types of cereal flours and related products in 21 CFR Part 137, including a standard of identity for "whole wheat flour" (§ 137.200) and "whole durum flour" (§ 137.225). Graham flour is an alternative name for whole wheat flour (§ 137.200).

Depending on the context in which a "whole grain" statement appears on the label, it could be construed as meaning that the product is "100 percent whole grain." We recommend that products labeled with "100 percent whole grain" not contain grain ingredients other than those the agency considers to be whole grains.

49.     The FDA has warned companies against making misleading whole grain representations in a product name – "HiHo Deluxe WHOLE WHEAT Crackers" and "Krispy WHOLE WHEAT Saltine Crackers" – where the products were predominantly white flour.[16]

50.     The Federal Trade Commission ("FTC") recognized that "[M]any reasonable consumers will likely understand 'whole grain' [claims] to mean that all, or virtually all, of the food product is whole grain, or that all of the grain ingredients in the product are whole grains.[17]

51.     By highlighting the whole grain ingredient, "Graham" as part of the product name, defendant is impliedly highlighting the presence of nutrients associated with whole grains – fiber.[18]

52.     Reasonable consumers will expect such a product provides at least 10 percent (a good source) or above 20 percent (high) of the RDI (Reference Daily Intake) or the DRV (Daily Reference Value) of fiber.[19]

53.     However, the Products are not a good source of, nor high, in fiber, as the nutrition

---

[16] CSPI Petition to Prohibit Misbranding of Whole Wheat Products and to Promulgate Food Labeling Regulations Concerning Products Made with Whole Wheat, Docket No. 93P-0227 (Jun. 25, 1993).
[17] In the Matter of Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements, Docket No. 2006-0066 Comments of the Staff of the Bureau of Consumer Protection, the Bureau of Economics, and the Office of Policy Planning of the Federal Trade Commission April 18, 2006
[18] 21 U.S.C. § 343(r)(1); 21 C.F.R. § 101.65.
[19] 21 C.F.R. § 101.54(b)-(c).

facts reveal the Product has 1g of fiber (4% or less).

54.   The Products are not predominantly made with whole grain graham flour, indicated by "enriched flour" appearing before "graham flour" on the ingredient list.

**INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, IRON, THIAMIN MONONITRATE, RIBOFLA-VIN, FOLIC ACID), GRAHAM FLOUR (WHOLE GRAIN WHEAT FLOUR), SUGAR, CANOLA AND/OR SOY-BEAN AND/OR PALM OIL, HONEY, LEAVENING (BAKING SODA, CALCIUM PHOSPHATE), SALT, NAT-URAL FLAVOR, SOY LECITHIN, SODIUM SULFITE.

**INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), GRAHAM FLOUR (WHOLE GRAIN WHEAT FLOUR), SUGAR, CANOLA AND/OR SOYBEAN AND/OR PALM OIL, HONEY, LEAVENING (BAKING SODA, CALCIUM PHOSPHATE), SALT, NATURAL FLAVOR, SOY LECITHIN, SODIUM SULFITE.

**B.   The Small Amount of Honey has the Effect of Darkening the Products' Color**

55.   Consumers associate darker hues in grain products with the presence of a significant amount of whole grain ingredients.

56.   Though the Products contain honey purportedly for its sweetening effect, the honey serves another purpose: imparting a darker color to a product which would be significantly whiter if based solely on the ratio of enriched flour to whole grain wheat, graham flour.

57.   According to W.K. Nip, the presence of "mostly reducing sugars in its sugar profile" causes "honey [to] brown[s] easily during baking, adding a natural dark color to baked products such as bread, crackers, and other products. Chapter 7, "Sweeteners."

58.   The use of a small amount of honey contributes to consumers getting the misleading impression the Products contain more whole grain graham flour than actually is present.

III.   Representations Fail to Declare the Product Contains Natural Flavor in the Semblance of Honey but not derived from Honey

59.    The Product's representations give the impression that not only is honey a primary or significant sweetening agent, but that it also contributes to the Product's characterizing flavor.

60.    Honey is listed on the ingredient list separately, but also is contained in the "Natural Flavor" ingredient.

61.    However, the "Natural Flavor" ingredient contains non-honey derived flavorings and components which simulate, resemble and/or reinforce the honey flavor and taste.

62.    A product's front label is required to be labeled in a way that accurately informs the consumer if what they are tasting is from the characterizing ingredient or a highly concentrated and enhanced flavoring substance.

63.    The Product fails to designate the flavor in the required manner, such as "Natural Honey Flavored Graham Crackers With Other Natural Flavor."  *See* 21 C.F.R. § 101.22(i)(1)(i); *see also* 21 C.F.R. § 101.22(i)(1)(iii).

64.    The failure to designate the Product's added flavor renders its labeling misleading because it gives the impression there is more honey than actually present.

65.    The Product's name, "Honey Graham Crackers," is not uniform among similar products, indicated by the competitor product below. 21 C.F.R. § 102.5(a).



66.    Where two products are otherwise identical in composition yet are labeled differently, consumers will be misled into purchasing and paying more for the item with fewer label disclaimers, such as the "Honey – Natural Flavor with Other Natural Flavor" indicated on the graham cracker product pictured above.

IV.    Defendant's Representations are Inconsistent with Regulations and Mislead Consumers

67.    A product branded "Honey Graham Crackers" that pictorially conveys the crackers adjacent to a jar of honey, a honey dipper, light yellow colored letters and the statement "Made with real honey" conveys to a reasonable consumer it is mostly sweetened with honey as opposed to sugar and is predominantly made with whole grain graham flours.

68.    The deception is compounded by the fact that there is no prominent language or

indication on the packaging that sugar is the primary sweetener and it is mostly made of enriched refined white flour.

69.     The branding and packaging of "Honey Graham Crackers" is not accurate or justifiable on the basis that honey is expected to substantively contribute to the Product's nutritive value, in contrast to its presence in amount more akin to a flavor.

70.     The Food, Drug, and Cosmetic Act ("FDCA") provides that a food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1).

71.     The FDA recognizes that a product names such as the one at issue here is misleading when they suggest one or more, but not all, of the key ingredients, like honey and whole grain graham flour:

> The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

21 C.F.R. § 101.18(b).

72.     FDA regulations require that a food product's name disclose the percentage of honey and whole grain, graham flour, when these are "characterizing ingredient[s]:"

> The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case.

21 C.F.R. § 102.5(b).

73.     Under 21 C.F.R. § 102.5(b), honey and whole grain graham flour are "characterizing ingredients" of the Products because their proportion in the Products has a material bearing on price and consumer acceptance of the Products for the reasons set forth above.

74.    Honey and whole grain graham flour are also "characterizing ingredients" of "Honey Graham Crackers" under § 102.5(b) because the labeling of the Products creates an erroneous impression that honey and whole grain graham flour are present in amounts greater than is actually the case.

V.    Conclusion

75.    Defendant's branding and packaging of the Products are designed to – and do – deceive, mislead, and defraud consumers.

76.    The amount of the characterizing components, honey and whole grain graham flour, have a material bearing on price or consumer acceptance of the Product because they are more expensive and desired by consumers.

77.    The Product is misleading because it does not contain the amount, type and percentage of the characterizing components as required and consistent with consumer expectations.

78.    Had plaintiffs and class members known the truth, they would not have bought the Product or would have paid less for it.

79.    Defendant's false, deceptive, and misleading branding and packaging of the Product has enabled defendant to sell more of the Product and at higher prices per unit, than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

80.    The value of the Product that plaintiffs actually purchased and consumed was materially less than its value as represented by defendant.

81.    Had plaintiffs and class members known the truth, they would not have bought the Product or would have paid less for it.

82.    The Product contains other representations which are misleading and deceptive.

83.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $2.99 per unit, excluding tax, compared to other similar products represented in a non-misleading way.

Jurisdiction and Venue

84.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

85.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

86.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

87.    This is a reasonable assumption because the Products are sold in stores across the nation and have been sold bearing the allegedly misleading claims for several years.

88.    Plaintiffs are citizens of New York.

89.    Defendant is a Minnesota corporation with a principal place of business in Minneapolis, Hennepin County, Minnesota and is a citizen of Minnesota.

90.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

91.    Venue is proper because plaintiffs' and many class members reside in this District and defendant does business in this District and State.

92.    A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

93.     Plaintiff Freddie Jamison is a citizen of Brooklyn, Kings County, New York.

94.     Plaintiff Charisse Adams is a citizen of Brooklyn, Kings County, New York.

95.     During the relevant statutes of limitations, plaintiffs purchased the Product for personal consumption within this district and/or State.

96.     Plaintiffs paid more for the Products than they otherwise would have if the Products did not have the misleading representations.

97.     Plaintiffs paid a premium price for the Products because prior to purchase, plaintiff saw and relied on the misleading representations.

98.     Plaintiffs would purchase the Products again if they were assured the representations were no longer misleading.

99.     Defendant Target Corporation is a Minnesota corporation with a principal place of business in Minneapolis, Minnesota, Hennepin County.

Class Allegations

100.   The classes will consist of all consumers in New York, the other 49 states and a nationwide class where applicable.

101.   Common questions of law or fact predominate and include whether defendant's representations and practices were likely to harm plaintiff and if plaintiffs' and class members are entitled to damages.

102.   Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive actions.

103.   Plaintiffs are adequate representative because their interests do not conflict with other members.

104.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

105.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

106.   Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

107.   Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>New York GBL §§ 349 & 350</u>
<u>(Consumer Protection from Deceptive Acts)</u>

108.   Plaintiffs incorporate by reference all preceding paragraphs.

109.   Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

110.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

111.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products to be exclusively or primarily sweetened with honey instead of sugar, contain more whole grain graham flour instead of white enriched flour and have a honey taste contributed by real honey as opposed to an added flavor ingredient.

112.    Plaintiff  and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

113.   Plaintiffs incorporate by reference all preceding paragraphs.

114.   Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing them to be exclusively or

primarily sweetened with honey instead of sugar, contain more whole grain graham flour instead of white enriched flour and have a honey taste contributed by real honey as opposed to an added flavor ingredient.

115.   Defendant had a duty to disclose and/or provide non-deceptive labeling of the Product and its components and ingredients, and knew or should have known same were false or misleading.

116.   This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

117.   The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

118.   Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

119.   Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

120.   Plaintiffs incorporate by reference all preceding paragraphs.

121.   Defendant manufactures and sells products which purport to be exclusively or primarily sweetened with honey instead of sugar, contain more whole grain graham flour instead of white enriched flour and have a honey taste contributed by real honey as opposed to an added flavor ingredient.

122.   The Products warranted to plaintiffs' and class members that they possessed

substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

123.  Defendant had a duty to disclose and/or provide a non-deceptive description and identification of the Products.

124.  This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

125.  Plaintiffs provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

126.  Defendant had received or should have been aware of the misrepresentations due to numerous complaints by consumers to its main office over the past several years.

127.  The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

128.  Plaintiffs and class members relied on the claims, paying more than they would have.

<u>Fraud</u>

129.  Plaintiffs incorporate by references all preceding paragraphs.

130.  Defendant's purpose was to sell a product which purported to be exclusively or primarily sweetened with honey instead of sugar, contain more whole grain graham flour instead of white enriched flour and have a honey taste contributed by real honey as opposed to an added flavor ingredient.

131.  Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label.

132.  Plaintiffs and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

Unjust Enrichment

133.  Plaintiff incorporates by reference all preceding paragraphs.

134.  Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying Plaintiffs as representatives and undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   February 22, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311

20

Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:19-cv-00650-NGG-PK
United States District Court
Eastern District of New York

Freddie Jamison, Charisse Adams, individually and on behalf of all others similarly situated,

Plaintiffs',

- against -

Target Corporation,

Defendant

## First Amended Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  February 22, 2020

/s/ Spencer Sheehan
Spencer Sheehan